THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RANDY F. LOOMIS, Appellant. [794 NYS2d 220]—

Appeal from a judgment of the Ontario County Court (James R. Harvey, J.), rendered August 21, 2002. The judgment convicted defendant, upon his plea of guilty, of murder in the second degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed.

Memorandum: Defendant appeals from a judgment entered upon his plea of guilty convicting him of murder in the second degree (Penal Law § 125.25 [1]). Because defendant did not move to withdraw his plea or vacate the judgment of conviction, he failed to preserve for our review his contention that his factual allocution is legally insufficient (*see People v Webb*, 286 AD2d 899, 899-900 [2001], *lv denied* 97 NY2d 659 [2001]). In

any event, defendant admitted all the essential elements of intentional murder during the allocution, including an admission that he intended to cause his victim's death. Thus, his factual allocution is legally sufficient (*see generally People v Brown*, 305 AD2d 1068, 1069 [2003], *lv denied* 100 NY2d 579 [2003]).

Defendant also contends that County Court erred in denying his motion to suppress certain physical evidence, including his bloodstained sneaker and t-shirt and letters the police found in a dresser at the home of defendant's sister, where defendant stayed after he was released from jail the day before the murder. The letters revealed that defendant had been lying to the police about the nature and extent of his relationship with the victim. Defendant's sister was the undisputed owner of the dresser, which was located in a common area of her residence, and it is uncontroverted that she gave the police consent to search that piece of furniture without a warrant. "[T]he police may lawfully conduct a warrantless search when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over the premises or personal property in question. [W]here the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that the individual does, in fact, have the authority to consent, evidence obtained as a result of such search shall not be suppressed" (*People v Johnson*, 202 AD2d 966, 967 [1994], *lv denied* 84 NY2d 827 [1994] [internal quotation marks and citations omitted]). The evidence seized will be admissible so long as " 'permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected' " (*People v Adams*, 53 NY2d 1, 8 [1981], *rearg denied* 54 NY2d 832 [1981], *cert denied* 454 US 854 [1981], quoting *United States v Matlock*, 415 US 164, 171 [1974]). Common authority rests on the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched" (*Matlock*, 415 US at 172 n 7). Here, we conclude that, under the circumstances, defendant and his sister had common authority over the dresser, and thus we conclude that the court did not err in refusing to suppress the letters found in the dresser. With respect to the remaining physical evidence, the observation by police of dark spots on defendant's sneaker and t-shirt during questioning did not

intrude into a constitutionally protected area, and the warrantless seizure of those items was justified because the police had reasonable cause to believe that they constituted incriminating evidence that could easily be destroyed (*see People v Thomas*, 188 AD2d 569, 571-572 [1992], *lv denied* 81 NY2d 1021 [1993]).

Defendant's remaining contentions are not preserved for our review and, in any event, are lacking in merit.

All concur except Hurlbutt and Martoche, JJ., who dissent and vote to reverse in accordance with the following memorandum.

Hurlbutt and Martoche, JJ. (dissenting). Because we disagree with the conclusion of the majority that defendant's sister had "common authority" over the dresser searched with her consent, we respectfully dissent.

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest on the law of property, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched" (*United States v Matlock*, 415 US 164, 171 n 7 [1974]). The burden of proving, by a preponderance of the evidence, that a third party's consent to search was authorized by virtue of common authority is on the People (*see People v Gonzalez*, 88 NY2d 289, 295 [1996]). A third party's mere ownership of the object to be searched is not sufficient to establish common authority; the evidence must also establish the third party's "access to, and mutual use of," the object (*People v Russo*, 201 AD2d 940, 941 [1994], *lv denied* 83 NY2d 857 [1994], *cert denied* 513 US 889 [1994]). Further, a homeowner's authority over the premises does not extend to a "guest's closed container (or similar item) . . . customarily used to hold one's most personal belongings" (*Gonzalez*, 88 NY2d at 293-294). Thus, "[o]verwhelmingly, the courts have . . . rejected the sufficiency of a host's general consent to search premises to validate the search of a guest's overnight bag, purse, *dresser drawers used exclusively for the guest's personal effects*, or similar objects" (*id.* at 294 [emphasis added]; *see People v Coston*, 271 AD2d 694 [2000], *lv denied* 95 NY2d 833, 962 [2000]; *see also Halsema v State*, 823 NE2d 668, 676-677 [Ind 2005]).

Here, the undisputed evidence adduced at the suppression hearing establishes that defendant was an overnight guest who

had slept on a "pull-out couch" in the living room of his sister's home for the two nights immediately preceding the search. The dresser, owned by defendant's sister, had been placed in the living room for the exclusive use of defendant, and had not been used by anyone else. No additional or different information was related to the investigator who obtained the consent of defendant's sister to search the dresser. We therefore conclude that here, as in *Gonzalez*, "[t]he People have failed to sustain their burden . . . . There are simply no factual circumstances on this record that were presented to the [investigator] when [defendant's sister] consented to the search of the [dresser], which would have supported a reasonable belief that she also had common authority, by way of mutual use, joint access or control," over the dresser (*id.* at 295-296; *see Coston*, 271 AD2d at 694; *see also Halsema*, 823 NE2d at 677).

We therefore would reverse the judgment of conviction, vacate the plea of guilty, grant defendant's motion to the extent that it seeks suppression of the evidence seized from within the dresser, and remit the matter to County Court for further proceedings on the indictment. Present—Pigott, Jr., P.J., Hurlbutt, Gorski, Martoche and Lawton, JJ.